IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID SMART,<br>    **Plaintiff,**<br>  v.<br><br>MAIN LINE HEALTH and META PLATFORMS, INC.,<br>    **Defendants.** | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

David Smart ("Plaintiff"), individually and for all others similarly situated, by and through his undersigned counsel, brings this action against Main Line Health ("MLH") and Meta Platforms, Inc. ("Meta") (collectively, "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1. This is an action alleging violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, and ancillary claims for breach of contract, negligence and intrusion upon seclusion to redress Defendants' practice of capturing and sharing statutorily-protected health care information, medical records and related information for commercial gain without the knowledge or consent of MLH's patients.

2. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) and Pennsylvania law, 28 Pa. Code § 115.27, both prohibit healthcare providers from sharing patients' health care information, medical records and related information with third parties except as needed for a patient's treatment, payment, or with their consent. These laws give patients a reasonable expectation of privacy in the information they provide to, and receive from, their healthcare providers relating to their medical care and treatment,

because this information may not be disclosed outside the healthcare setting without patients' knowledge and consent.

3. Defendants have violated these laws by accessing and sharing MLH patients' health care information, medical records, and related information without their knowledge or consent. In short, MLH encourages patients to use its various web properties, including *www.mainlinehealth.org* and the MLH MyChart online portal ("MLH MyChart portal") to manage their healthcare services by, among other things, scheduling appointments, viewing test results, requesting prescriptions, and making payments. Defendants worked together to design and place computer code on its web properties that secretly tracks patients' protected healthcare information (*i.e.,* appointments, procedures, medicines) and metadata generated from their interaction with the site (*i.e.,* IP address, searches, location information) and automatically sends all of this information to Meta where it is used both to build-out Meta's user profiles and generate targeted advertising on its social media platforms, all to Defendants' financial benefit.

## PARTIES

4. David Smart is an adult person who resides in Upper Darby Pennsylvania (Delaware County). Mr. Smart has been a patient of MLH and has used MLH web properties including, *www.mainlinehealth.org* and the MLH MyChart portal since before 2018. Mr. Smart opened a Facebook account before 2012 and has continuously maintained this account to the present. Since 2018, Mr. Smart has used the MLH web properties to schedule appointments, search for specific symptoms, health conditions and providers, view test results, contact his healthcare providers, and review his medications, among other things. By doing so, Mr. Smart's personally-identifiable patient information and patient health information were intercepted and disclosed by Defendants as described herein. Mr. Smart did not receive any notice that his

personally-identifiable patient information or patient health information were being shared with Meta or Facebook, or consent to any such disclosure.

5. MLH is a non-profit health system with a corporate office in Radnor, Pennsylvania (Montgomery County) that consists of four acute care hospitals (Lankenau Medical Center, Bryn Mawr Hospital, Paoli Hospital and Riddle Hospital) and Bryn Mawr Rehabilitation Hospital. MLH encourages its patients, which number in the thousands, to use and communicate with their medical providers through its web properties, including www.mainlinehealth.org and the MLH MyChart portal.

6. Meta is a Delaware corporation and global technology conglomerate with its principal place of business in Menlo Park, California. Meta's business includes operation of the Facebook, Instagram and WhatsApp social media sites and related applications.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. and the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.

8. This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 and 1711-15 ("CAFA"), expressly provides federal courts with jurisdiction over any class action in which: the proposed class includes at least 100 members; any member of the class is a citizen of a state and any defendant is a citizen or subject of a foreign state; and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in, and are subject to, personal jurisdiction in this District. Venue is also proper in this

District, because a substantial part of the events or omissions giving rise to the claim occurred in, and emanated from, this District.

## MATERIAL FACTS

10. When a person opens a Facebook account, they accept its Terms, Data Policy, and Cookie Policy *via* a checkbox on the sign-up page, *https://www.facebook.com/*. These Terms, Data, and Cookie Policies are binding upon Meta and its users.

11. The Facebook Data Policy expressly states that Meta "requires" businesses that use Meta Pixels "to have lawful rights to collect, use, and share your data before providing any data to [Facebook]." [1]

12. However, Meta does not verify that the businesses using Meta Pixels, like MLH, have obtained the requisite consent as stated in their Data Policy.

13. Instead, Meta applies an "honor system" where businesses, like MLH, "represent and warrant that [they have] provided robust and sufficient prominent notice to users regarding the Business Tool Data collection, sharing, and usage."[2]

14. As a result, Meta makes its Pixels available to any willing business or publisher, including healthcare providers like MLH, regardless of the nature of its business.

15. Meta's agreement with MLH concerning the use of Meta Pixels does not comply with the requirements of HIPAA or Pennsylvania law because it does not contain the required level of protection for consumers' personally-identifiable patient information and patient health information and allows this data to be shared without notice to, or consent from, MLH's patients.

---

[1] *See https://www.facebook.com/privacy/policy/version/20220104/*.

[2] *See https://www.facebook.com/legal/terms/businesstools*.

4

16. A Facebook ID is a unique and persistent identifier assigned to each user. With it, any ordinary person can look up a user's Facebook profile and name. When Facebook users like Plaintiff, with personally-identifiable Facebook ID cookies on their browser, use MLH web properties including *www.mainlinehealth.org* and the MyChart portal (https://www.mainline *health.org/patient-services/patient-portals*), code embedded on these sites causes their identity and personally-identifiable patient information and patient health information to be transmitted to Meta by the user's browser. This transmission is not the patient's decision, but results from MLH's and Meta's purposeful use of Meta Pixels by incorporation of computer code into MLH's web properties. Defendants could have easily programmed its web properties or the Meta Pixels not to automatically transmit this information to Meta when a patient logs in. However, it is not in either Defendant's financial interest to do so, because they both benefit financially by sharing and using this highly sought-after information.

17. Notably, while Meta can easily identify any individual on Facebook with only their Facebook ID, so too can any ordinary person who comes into possession of a Facebook ID. Indeed, ordinary persons who come into possession of a Facebook ID can connect to any Facebook profile. With a Facebook ID and the personally-identifiable patient information and patient health information Defendants intercept and disclose without consent from the Class members, it is possible to determine that Facebook user's doctors, health information, medications, insurance information and more.

18. MLH created and maintains its web properties for patients to communicate with their doctors, search for specific symptoms, health conditions or providers, schedule healthcare appointments, receive test results, pay bills and engage in related matters.

19. MLH represents that it is "required by law to make sure that [its patients' protected health information] is kept private."[3]

20. MLH's Privacy Policy explains that: "Except as permitted under this Notice or as permitted by law, we will seek your written permission prior to using or sharing your information for marketing purposes or selling your information.[4]

21. Notwithstanding these promises, without providing any notice to Plaintiff or the Class members, or receiving their consent, MLH and Meta worked cooperatively to design, create and deploy tags, tracking pixels, and web beacons and ("Meta Pixels") on *www.mainline health.org*, and the MLH MyChart portal that cause the contemporaneous transmission of personally-identifiable patient information and patient health information to Meta, which used this data for multiple commercial purposes without ever providing notice to, or receiving consent from, MLH's patients.[5]

22. At all relevant times, Defendants knew that Meta Pixels intercepted and disclosed personally-identifiable patient information and personal health information. This is clear from, among other things, the functionality of the Pixels, the nature of the targeted advertising enabled from the data the Pixels recovered, including advertising based on, for example, the prescription drugs, medical tests and procedures captured from their interaction with the MLH's web properties.

---

[3] *See* https://www.mainlinehealth.org/about/policies/patient-privacy-policies

[4] *See* https://www.mainlinehealth.org/about/policies/patient-privacy-policies

[5] Meta Pixels are invisible tools "rendered" out of computer code that track consumers' actions on its customers' websites and report them back to Meta and its subsidiaries. To "render" Meta Pixels for a given website, the site owner tells Meta which website events it wants to capture (*e.g.*, scheduling an appointment or messaging a doctor) and Meta writes code that instructs its Meta Pixels how to capture the data and provides the necessary code to be incorporated into its website.

23. Meta benefits from customers installing Meta Pixels on their websites because it gives the customer a greater incentive to advertise through on Meta's social media platforms and, even if the business does not buy social media ads, the data Meta Pixels collect (particularly when this data originates outside Meta's platforms), helps Meta build more fulsome profiles of its users' preferences and traits by cross-referencing and adding to the data already in its own, detailed user profiles, all of which allows it to sell highly-targeted ads that generate significant revenue.

24. MLH benefits from installing Meta Pixels on its web properties because Meta pays it for access to the commercially-valuable, personally-identifiable patient information and patient health information it receives from the *www.mainlinehealth.org* and the MLH MyChart portal.

25. Since 2018, Plaintiff has used *www.mainlinehealth.org* to schedule appointments, search for specialty providers, and to research specific symptoms, health conditions, and treatments.

26. Before 2018, Plaintiff created an account on the MLH MyChart portal by entering his name, mailing address, date of birth, gender, phone number, e-mail address and abbreviated Social Security number. Since 2018, Plaintiff has used the MLH MyChart portal to schedule appointments, view test results, contact his healthcare providers, and review his medications, among other things.

27. Plaintiff never received any notice that MLH would disclose his personally-identifiable patient information or personal health information from the MLH's web properties to Meta. Plaintiff never consented to allow MLH to disclose his personally-identifiable patient information or patient health information to Meta. MLH never provided Plaintiff with any means to opt-out of the disclosure of his personally-identifiable patient information or patient health information from *www.mainlinehealth.org* and the MLH MyChart portal to Meta.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) for:

> All patients of MLH, or any of its affiliates, whose use of MLH's web properties caused their personally-identifiable patient information or personal health information to be shared with Meta without their consent.

("the Class members").

29. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(1), because the Class members are so numerous and geographically dispersed that their joinder would be impracticable. Plaintiff believes that Defendants' business records will permit the identification of thousands of people meeting the Class definition.

30. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(2), because there are many common questions of facts and law concerning and affecting the Class members, including:

   a. Whether MLH had a duty to protect and refrain from disclosing the Class members' personally-identifiable patient information and personal health information;

   b. Whether MLH intentionally disclosed, and Meta intentionally received, the Class members' personally-identifiable patient information and patient health information;

   c. Whether the Class members consented to MLH's disclosure of their personally-identifiable patient information and patient health information to Meta; and

   d. Whether the Class Members are entitled to damages as a result of Defendants' conduct.

31. Plaintiff also anticipates that Defendants will raise defenses common to the Class.

32.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(3), because Plaintiff's claims are typical of the claims belonging to the Class members.  Plaintiff and the Class members were harmed by the same wrongful conduct perpetrated by Defendants that caused their personally-identifiable patient information and patient health information to be intercepted and disclosed without notice or consent.  As a result, Plaintiff's claims are based on the same facts and legal theories as the Class members' claims.

33.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(4), because Plaintiff will fairly and adequately protect the interests of all Class members, there are no known conflicts of interest between Plaintiff and the class members and Plaintiff has retained counsel experienced in the prosecution of complex litigation.

34.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because common questions of law and fact predominate over questions affecting individual Class members, because a class action is superior to other available methods for the fair and efficient adjudication of these claims and because important public interests will be served by addressing the matter as a class action.  Further, the prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and substantially impair Class members' ability to protect their interests.

## COUNT I
### Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*
### (Against both Defendants)

35.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

36.     The Class members' use of MLH's web properties is an electronic communication under the Electronic Communications Privacy Act ("ECPA").  *See* 18 U.S.C. § 2510(12).

37. The MLH MyChart portal and *www.mainlinehealth.org* are "electronic communication services" under the ECPA. *See* 18 U.S.C § 2510(15).

38. Whenever Plaintiff and the Class members interacted with the *www.mainlinehealth.org* or the MLH MyChart portal, Defendants violated the ECPA by using Meta Pixels to intercept (or endeavor to intercept) the contents of their electronic communications while knowing (or having reason to know) this information was obtained through the unlawful interception of an electronic communication. *See* 18 U.S.C. §§ 2511 (1)(a) and (c)–(d).

39. Whenever Plaintiff and the Class members interacted with *www.mainlinehealth.org* or the MLH MyChart portal, Defendants violated the ECPA by using Meta Pixels to intentionally disclose (or endeavor to disclose) the contents of their electronic communications while knowing (or having reason to know) this information was obtained through the unlawful interception of an electronic communication. *Id*.

40. Whenever Plaintiff and the Class members interacted with *www.mainlinehealth.org* or the MLH MyChart portal, Defendants violated the ECPA by intentionally using (or endeavoring to use) the contents of their electronic communications while knowing (or having reason to know) this information was obtained through the unlawful interception of an electronic communication. *Id*.

41. Whenever Plaintiff and the Class members interacted with *www.mainlinehealth.org* or the MLH MyChart portal, Defendants violated the ECPA by intentionally divulging the contents of their electronic communications while in transmission on that service to any person or entity other than an addressee or intended recipient (or an agent of such addressee or intended recipient). *See* 18 U.S.C. § 2511 (3)(a).

42. Defendants do not meet any of the exceptions to liability provided by 18 U.S.C. §§ 2511.

43. Any person whose electronic communication is intercepted in violation of ECPA has a private right of action under 18 U.S.C. §2520(a).

## COUNT II
### Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*
### (Against Meta only)

44. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45. The MLH MyChart portal and *www.mainlinehealth.org* are "facility[ies] through which an electronic communication service is provided" under the Stored Communications Act ("SCA").

46. Meta is an "entity providing an electronic communication service to the public" under the SCA. *See* 18 U.S.C. § 2702(a)(1).

47. Meta is an "entity providing remote communication service to the public" under the SCA. *See* 18 U.S.C. § 2702(a)(2).

48. Meta violated the SCA by intentionally accessing *www.mainlinehealth.org* and the MLH MyChart portal without authorization. *See* 18 U.S.C. § 2701(a)(1).

49. Meta violated the SCA by intentionally exceeding an authorization to access the *www.mainlinehealth.org* and the MLH MyChart portal. *See* 18 U.S.C. § 2701(a)(2).

50. Meta violated the SCA by knowingly divulging the contents of communications while electronically stored on *www.mainlinehealth.org* and the MLH MyChart portal. *See* 18 U.S.C. § 2701(a)(2).

51. Meta violated the SCA by knowingly divulging the contents of communications maintained on MLH's web properties that were received by means of electronic transmission from

(or created by means of computer processing of communications received by means of electronic transmission from) its subscribers or customers. *See* 18 U.S.C. § 2701(a)(2)(A).

52. Meta violated the SCA by knowingly receiving from MLH the contents of communications maintained on *www.mainlinehealth.org* and the MLH MyChart portal that were received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from) that it was not authorized to access for any purpose. *See* 18 U.S.C. § 2701(a)(2)(B).

53. Meta violated the SCA for purposes of commercial advantage, malicious destruction or damage, private commercial gain and in furtherance of criminal and tortious acts in violation of the Constitution or laws of the United States or any State. *See* 18 U.S.C. § 2701(b)(1).

54. Meta does not meet any of the exceptions to liability provided by 18 U.S.C. § 2701(c).

55. 18 U.S.C. § 2707(a) provides a private right of action to any person "aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind."

## COUNT III
**Breach of Contract**
**(Against Meta only)**

56. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57. Meta requires Facebook users to click a box indicating that, "By clicking Sign Up, you agree to our Terms, Data Policy and Cookies Policy."

58. "Click-wrap agreements" such as the one used by Facebook are valid and binding contracts.

59. The Facebook Terms, Facebook Data Policy, and Facebook Cookie Policy are binding on Facebook and its users.

60. The Facebook Data Policy promises users that Facebook "requires each of [Facebook's] partners to have lawful rights to collect, use and share your data before providing any data to [Facebook]."

61. Meta breached these contractual promises by not requiring MLH, a healthcare provider partner, to provide notice and obtain consent from its patients before receiving their personally-identifiable patient information and patient health information from *www.mainlinehealth.org* and the MLH MyChart portal.

62. The personally-identifiable patient information and other patient health information that Meta obtained from the Class members through MLH's web properties in breach of these contractual promises include: Patient IP addresses, cookie identifiers, device identifiers, account numbers and every electronic communication the patient has through *www.mainlinehealth.org* and the MLH MyChart portal, including medical conditions, doctors' appointments, test results and communications with their healthcare providers.

63. Meta's breach of contract has caused Plaintiff and the Class members to suffer damages that are measured, at a minimum, by the value Meta paid to MLH for access to their personally-identifiable patient information and patient health information from *www.mainlinehealth.org* and the MLH MyChart portal, which represents the value of Plaintiff's and the Class members' data.

**COUNT IV**
**Negligence**
**(Against MLH only)**

64. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65. Plaintiff and the Class members were patients of MLH and received healthcare services from MLH.

66. Federal law imposes a similar duty on healthcare providers not to disclose patients' medical records for marketing purposes without the patient's express written authorization. *See* 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

67. Pennsylvania law imposes a duty on healthcare providers to maintain the confidentiality of all medical records and limit access to those records only to those people whom a patient grants express written authorization to view them. *See* 28 Pa. Code § 115.27

68. MLH breached its duty to maintain the confidentiality of medical records belonging to Plaintiff and the Class members by intentionally deploying tracking pixels and web beacons on *www.mainlinehealth.org* and the MLH MyChart portal that caused the transmission of personally-identifiable patient information and personal health information to third parties, including Meta.

69. Plaintiff and the Class members have suffered damages as a result of MLH's breach of its duty to maintain the confidentiality of medical information belonging to Plaintiff and the Class members. Plaintiff's damages are measured, at a minimum, by the value of the payments MLH received from Meta related to its use of Meta Pixels on www.mainlinehealth.org and the MLH MyChart portal, since these payments were provided to gain access to Plaintiff's and the Class members' confidential medical records.

70. MLH's breach caused Plaintiff's and the Class members' damages, because it gave Meta access to their personally-identifiable patient information and personal health information, in contravention of all its duties, so this information could be used for commercial purposes.

## COUNT V
### Invasion of Privacy - Intrusion Upon Seclusion
### (Against MLH only)

71. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72. The common law tort of intrusion protects others from intentionally intruding into a communication or matter as to which another has a reasonable expectation of privacy.

73. Under federal law, a health care provider may not disclose personally identifiable information about a patient, potential patient, or household member of a patient for marketing purposes without the patient's express written authorization. *See* HIPAA, 42 U.S.C § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

74. The Office of Civil Rights at the United States Department of Health and Human Services ("HHS") has issued guidance concerning the online tracking technologies used by HIPAA covered entities.[6] HHS has concluded that "HIPAA Rules apply when the information that regulated entities collect through tracking technologies or disclose to tracking technology vendors includes protected health information (PHI)." *Id*. It has clarified that HIPAA protects both authenticated (i.e. patient portal) and unauthenticated (i.e. public) pages. *Id*.

75. Plaintiff and the Class members have a reasonable expectation of privacy with respect to their use of, communications on and documents accessed through, the MLH MyChart portal and www.mainlinehealth.org not only because Pennsylvania and federal law impose a strict duty of confidentiality with respect to this information, but also because they were engaged in private communications concerning their personal healthcare decisions (communications with their healthcare providers, treatments, medications, etc…) on a password-protected website

---

[6] *See* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html#ftnref21

15

created and maintained by their healthcare provider for the express purpose of communicating about private healthcare matters.

76. MLH intentionally intruded into communications and matter as to which Plaintiff and the Class members have a reasonable expectation of privacy by allowing the deployment of Meta Pixels on the MLH MyChart portal that sent Plaintiff's and the Class members' personally-identifiable patient information, personal health information to Meta.

77. MLH also intentionally intruded into communications and matter as to which Plaintiff and the Class members have a reasonable expectation of privacy because MLH's Patient Privacy Policy expressly promises that MLH is "required by law to: make sure that [its patients'] PHI is kept private," and "[MLH] will seek your written permission prior to using or sharing your information for marketing purposes or selling your information."[7]

78. MLH's intrusion into Plaintiff's and the Class members' privacy occurred in a manner that is highly offensive to a reasonable person, because: MLH intentionally deceived its patients into believing that communications and matters addressed on its web properties would be private; worked with Meta to install a secret means of collecting this information without patients' notice and consent; sold Plaintiff's and the Class members' personally-identifiable patient information and personal health information to be turned into targeted advertising on Meta's various social media platforms; and continued to engage in this behavior even after its conduct became publicly-known.

79. MLH did not provide Plaintiff or the Class members with notice that it was sharing their personally-identifiable patient information and personal health information with Meta and

---

[7] *See* https://www.mainlinehealth.org/about/policies/patient-privacy-policies

Plaintiff and the Class members did not consent to share their personally-identifiable patient information and personal health information with Meta.

80. As a result of MLH's intrusion upon their seclusion, Plaintiff and the Class members have suffered, and will continue to suffer, damages and injury as set forth herein.

81. For intentionally violating their common law entitlement to seclusion in their private affairs, Plaintiff and the Class members seek all monetary and non-monetary relief allowed by law, specifically including injunctive relief requiring MLH to cease violating their privacy rights without their knowledge or consent and nominal damages of $100 per violation.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully asks this Court for an Order:

a. Certifying this case as a class action, appointing Plaintiff as Class Representatives, and appointing Stephan Zouras LLP as Class Counsel;

b. Entering judgment for Plaintiff on his ECPA claim and awarding all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages and attorney's fees and costs;

c. Entering judgment for Plaintiff on his SCA claim and requiring Meta to pay all available damages, including equitable or declaratory relief, statutory damages of at least $1,000 per person measured by the profit from Meta's violation of the Act, punitive damages and attorney's fees and costs;

d. Entering judgment for Plaintiff on his breach of contract claim and requiring Meta to pay all available damages;

e. Entering judgment for Plaintiff on his negligence claim and requiring MLH to pay all available damages;

f. Entering judgment for Plaintiff on his intrusion upon seclusion claim and requiring MLH to pay all available damages;

g. Awarding injunctive and equitable relief to protect the interests of Plaintiff and the Class members;

   h. Awarding recovery of Plaintiff's reasonable attorneys' fees and reimbursement of his litigation expenses;

   i. Awarding pre- and post-judgment interest on all damages awarded; and

   j. Awarding such additional relief as justice requires.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

                                Respectfully Submitted,

Date:   December 30, 2022         /s/ *David J. Cohen*
                                David J. Cohen
                                **STEPHAN ZOURAS, LLP**
                                604 Spruce Street
                                Philadelphia, PA 19106
                                (215) 873-4836
                                *dcohen@stephanzouras.com*

                                Ryan F. Stephan (*pro hac vice* forthcoming)
                                James B. Zouras (*pro hac vice* forthcoming)
                                Teresa M. Becvar (*pro hac vice* forthcoming)
                                **STEPHAN ZOURAS, LLP**
                                100 N. Riverside Plaza, Suite 2150
                                Chicago, Illinois 60606
                                (312) 233-1550
                                *rstephan@stephanzouras.com*
                                *jzouras@stephanzouras.com*
                                *tbecvar@stephanzouras.com*

                                *Attorneys for Plaintiff*